DECISION AND JUDGMENT ENTRY
{¶ 1} Gary McDonald ("Father"), father of Caleb Barnhart, appeals the Athens County Court of Common Pleas, Juvenile Division, adjudication granting permanent custody of his child to Athens County Children Services ("ACCS"). Father contends that ACCS failed to prove that his environment, separate and apart from Mother's environment, caused his child's neglect or dependency. Because the question of who caused the neglect or dependency is not relevant to the finding of neglect or dependency, we disagree. Father also contends that ACCS did not produce the clear and convincing evidence necessary to show that this is one of those "extreme situations" in which the trial court should grant permanent custody as the initial disposition. Because the record contains some competent, credible evidence to support the trial court's findings, we disagree. Additionally, Father contends that the trial court erred in finding that ACCS made reasonable efforts to unify him with his child, when, in fact, ACCS made no efforts to do so. Because the record contains some competent, credible evidence that attempting to implement a reunification plan would be futile, we disagree. Accordingly, we overrule each of Father's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} Father and Geroldean Barnhart ("Mother") are boyfriend and girlfriend. Though Father maintains his own residence, he has stayed with Mother "off and on" for the past three to seven years. He usually is at Mother's trailer in Athens County seven days a week. Father and Mother are step-siblings and half-cousins. Their familial relationship is relevant in that they have many members of their extended family in common, they admit that almost all of their extended family members use illegal drugs, and many of their extended family members live in the same field where Mother's trailer sits.
 {¶ 3} Mother did not obtain any prenatal care for Caleb. She gave birth to Caleb on August 31, 2004. At birth, Caleb's meconium tested positive for marijuana, morphine, and benzodiazepines. Neither Caleb nor Mother received anything at the hospital that would have caused Caleb to test positive for these drugs.
 {¶ 4} Caleb's hospital doctor testified that, for Caleb to test positive for marijuana at the significant level he did, Mother must have either smoked it directly or sat in a small, enclosed area with several people chainsmoking it. The doctor also testified that Mother must have taken morphine a month or more prior to delivery. Prescription medication for Mother's seizure disorder may have caused the benzodiazepines in Caleb's meconium. However, while Mother has had valid prescriptions for the anti-seizure medication in the past, she could not say whether she had a valid prescription for the medication during her pregnancy. She frequently "borrows" prescription medication from her aunt, Father's ex-wife, who also has a seizure disorder.
 {¶ 5} ACCS removed Caleb from Mother's care on the day of his birth. Caleb is Mother's tenth child. She does not have custody of any of her children. Most recently, Mother surrendered her parental rights to five of her children on August 22, 2003. Shortly thereafter, on October 6, 2003, the court terminated Mother's rights to her infant twins, who were born on June 23, 2003.
 {¶ 6} Mother first denied Father could be the biological father of Caleb, though Father accompanied Mother to the hospital for the delivery. The biological father(s) of the Mother's last three children prior to Caleb has never been identified. Father admits that he may be their biological father, but he never went for testing to determine their parentage. Mother testified that Father is the most likely potential biological father of the twins.
 {¶ 7} When an ACCS caseworker attempted to visit Mother at her home prior to the hearing, only Father was there. At that time, he commented to her that his "relatives" would raise Caleb if Caleb was his and Mother could not raise Caleb. Paternity testing established Father as Caleb's biological father on the first day of trial, November 16, 2003.
 {¶ 8} Mother's teenage daughters testified at the hearing. Tiffany, Mother's oldest daughter, testified that Father raped her between ten and twenty times, from when she was around six years old until right before she went into foster care. Another daughter, Jessica, testified that she saw Father punch Mother in the face. In that incident, Mother accused Father of sexually assaulting another daughter, Suzanne, while Father accused Mother of having cocaine in the microwave.
 {¶ 9} Both Tiffany and Jessica testified that, before their removal from Mother's home, they observed Father smoking marijuana. Each witnessed Father and Mother smoking marijuana together. The girls also testified about Mother using and selling many other illegal drugs on an almost daily basis. The girls acknowledged that they did not see Father smoke marijuana as often as Mother, and neither could recall if they'd ever seen Father do any other drugs. Tiffany testified that Mother gave her marijuana and they smoked it together.
 {¶ 10} Mother and Father testified that all their relatives smoke marijuana, but both adamantly denied ever smoking it themselves. The girls testified that Mother and Father have reputations for untruthfulness. Additionally, they both testified that Father is around Mother's home all the time, everyday. Finally, Jessica testified that, when her adoptive parents' allowed her to visit with Mother approximately one month prior to her testimony, she observed Mother smoking marijuana.
 {¶ 11} ACCS caseworkers testified that Mother refused visitation with Caleb unless ACCS would guarantee that she would not lose custody of him. Father likewise did not express any interest in visitation with Caleb even after his paternity was established.
 {¶ 12} Father is approximately fifty years old. He testified that he only "knows of" one other biological child, a daughter who is thirty years old. Father first guessed that she is twenty-seven, and then later testified that she is thirty-two. He could not recall her last name or her address when first asked, but he knows that she lives in Columbus and has two sons. He incorrectly guessed his grandsons' ages.
 {¶ 13} Father was charged with non-support related to his daughter in 1995. He is still required to make payments related to his child support obligation for her. He is self-employed, and reported less than $10,000 in income for 2003. The daughter testified that she now has an excellent relationship with Father. Father also has a step-son, but has not lived with the boy since 1998 or 1999. He is not sure whether or not he is still legally married to his step-son's mother.
 {¶ 14} The trial court found Caleb to be a neglected and dependant child. The court granted ACCS's complaint for permanent custody, terminating the parental rights of Mother and Father.
 {¶ 15} Father appeals, asserting the following assignments of error: "I. The state failed to prove that Father's conduct or Father's environment, separate and apart from Mothers, caused this child to be neglected or dependent. II. Permanent custody should only be granted as the initial disposition under the most extreme situations, where (re)unification is not possible. III. It was not reasonable for Children Services to exert no efforts to (re)unify with the Father in this case."
 II. {¶ 16} In his first assignment of error, Father contends that ACCS failed to prove that his conduct or environment, separate and apart from Mother's, caused Caleb's neglect or dependency. However, as ACCS notes in its brief, the issue of who caused the neglect or dependency is irrelevant to the question of whether a child is neglected or dependent.
 {¶ 17} Pursuant to R.C. 2151.35, clear and convincing evidence must support a finding of neglect or dependency. In re Pieper Children
(1993), 85 Ohio App.3d 318, 326, citing In re Green (1984),18 Ohio App.3d 43. "Clear and convincing evidence" is that which "`produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. In re Baby GirlDoe, 149 Ohio App.3d 717, 2002-Ohio-4470, at ¶ 89, citing State v.Schiebel (1990), 55 Ohio St.3d 71, 74.
 {¶ 18} We will not substitute our own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montogomery App. No. 01CA0083, 2003-Ohio-608 at ¶ 102, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 19} As statutorily defined, a neglected child includes one who "lacks adequate parental care because of the faults or habits of the child's parents, guardian or custodian," or whose parent, guardian or custodian "neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being." R.C.2151.03(2) and (3). A dependent child is one who "lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian," or "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(B) and (C).
 {¶ 20} R.C. 2151.23(A)(1) provides that the trial court must determine the issue of neglect or dependency as of the date specified in the complaint. In re Hay (May 31, 1995), Lawrence App. No. 94CA23. Here, at the time of the complaint, Mother identified another man as Caleb's biological father. Caleb was born with marijuana, morphine, and benzodiazepines in his system. Mother had received no prenatal care. Under Ohio law, "when a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug use, the newborn is * * * per se an abused child," not just a neglected and dependent child as Caleb was adjudicated. In re Baby Boy Blackshear
(2000), 90 Ohio St.3d 197, 2000-Ohio-173, syllabus. See, also, In reStarkey, 150 Ohio App.3d 612, 2002-Ohio-6892, at ¶ 21.
 {¶ 21} Because the record contains evidence that Mother received no prenatal care and that Caleb tested positive for illegal drugs at the time of his birth, we find that the record contains some competent, credible evidence to satisfy the clear and convincing standard for establishing Caleb's neglect and dependency. Accordingly, we overrule Father's first assignment of error.
 III. {¶ 22} In his second assignment of error, Father contends that a trial court should only grant permanent custody as the initial disposition in extreme situations where reunification is not possible. Father argues that this situation is not one of those extreme situations. Thus, Father asserts that the trial court erred in finding that the record contains clear and convincing evidence to support a permanent custody disposition.
 {¶ 23} R.C. 2151.353(A)(4) provides that if a child is adjudicated abused, neglected, or dependent, the court may commit the child to the permanent custody of a children services agency "if the court determines in accordance with [R.C. 2152.414(D)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with [R.C.2151.414(D)] that the permanent commitment is in the best interest of the child." R.C. 2151.414(D) enumerates five factors the court must consider in determining whether it is in a child's best interest to terminate parental rights. Those five factors are: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply. Pursuant to R.C. 2151.414(E), the court also must find that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 24} In making the determinations required under R.C. 2151.414(D), the court shall not consider the effect granting permanent custody will have upon the child's parents. R.C. 2151.414(C). A child does not first have to be put into a particular environment before the court can determine that the environment is unhealthy or unsafe. In re Bishop
(1987), 36 Ohio App.3d 123, 124; In re Campbell (1983),13 Ohio App.3d 34, 36. "The unfitness of the parent, guardian or custodian can be predicted by past history." Bishop at 126; In re BabyBoy Eddy (Dec. 6, 1999), Fairfield App. No. 98AB36.
 {¶ 25} A permanent custody determination made pursuant to R.C. 2151.414
must be supported by clear and convincing evidence. Baby Girl Doe,
supra, at ¶ 89; In re Hiat, (1993), 86 Ohio App.3d 716, 725. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we can find that the record contains some competent, credible evidence to support the trial court's findings. BabyGirl Doe at ¶ 89; Schiebel, supra.
 {¶ 26} Father contends that the trial court's decision is not supported by sufficient evidence. However, the trial court made factual findings relating to each of the R.C. 2151.414(D) factors for determining Caleb's best interests. Specifically, with regard to Caleb's interrelationship with Father and others, the trial court found that: (1) Caleb has no history of a relationship with his biological parents; (2) he is doing well in foster care; and (3) a family that has already adopted some of his siblings may adopt him. The trial court found that Caleb is too young to express his wishes. With regard to Caleb's custodial history, the trial court found that ACCS has had custody of Caleb since birth. With regard to Caleb's need for a legally secure placement, the trial court found that Caleb needs and deserves a legally secure placement. Finally, the trial court found that none of the R.C.2151.414(E)(7) to (11) factors apply.
 {¶ 27} The trial court also found, pursuant to R.C. 2151.414(E)(2), (15), and (16) that Caleb cannot be placed with either of his parents within a reasonable time. Specifically, with regard to Father, the trial court noted that Father is not married to Mother and that they have no appropriate history together. The record contains testimony that Father and Mother smoke marijuana together and are frequently surrounded by relatives who use illegal drugs. Father has been involved with, and virtually living with, Mother during times in which she admittedly failed to provide an adequate and safe home for her children. He continues to stay with Mother as many as seven days per week. Mother indicated that her home environment did not change in any way since the other children's removal, except for the fact that her trailer is no longer so crowded.
 {¶ 28} Father is not aware of whether he is legally married or not. He does not have a stable home. Father's income is less than $10,000 per year. The record also contains testimony that Father sexually abused one, perhaps two, of Mother's children, and that Father punched Mother in the face in front of the children. Father denies drug use. Father has a reputation for being untruthful. Father still has not fulfilled his child support obligation for his thirty-year-old daughter. Father told an ACCS caseworker that he would have relatives raise Caleb if he received custody. The record contains unrefuted testimony that all, or almost all, of Father and Mother's relatives smoke marijuana or use other illegal drugs.
 {¶ 29} We find that this constitutes some competent, credible evidence to support the trial court's findings that it is in Caleb's best interest to be placed in the permanent custody of ACCS and that Caleb cannot be placed with either of his parents within a reasonable period of time. Accordingly, we overrule Father's second assignment of error.
 IV. {¶ 30} In his third assignment of error, Father contends that ACCS did not make reasonable efforts to unify Caleb with him. Specifically, Father contends that ACCS did not make any efforts toward reunification.
 {¶ 31} Pursuant to R.C. 2151.419(A)(1), before granting permanent custody to a public children's services agency, the trial court must determine whether the agency made reasonable efforts to prevent the continued removal of the children from the home. In determining whether the agency made reasonable efforts to reunify the children with their parents, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776, at ¶ 18. Although a children services agency should make a good faith effort to reunite a dependent child with his biological parent, such a reunification plan is not required where it would be futile to implement one. In re Leitwein, Hocking App. No. 03CA18, 2004-Ohio-1296, at ¶ 30;Elmer v. Lucas Cty. Children Serv. Bd. (1987), 36 Ohio App.3d 241, 244.
 {¶ 32} Here, the trial court found that ACCS made reasonable efforts to prevent the removal of the children from the home and to eliminate their continued removal from the home. Specifically, the trial court found that ACCS has a long and unsuccessful history of reunification attempts with Mother and her other children. During most or all of this unsuccessful history, Father was involved in the lives of Mother and her children and stayed at their residence between five and seven nights per week. Father continues to virtually live with Mother, and is surrounded by relatives who abuse drugs. Although Father denies any illegal drug use, witnesses testified that they have observed him using illegal drugs. Father has a history of violence against Mother in front of the children, and a history of sexually abusing Mother's children, all during ACCS's involvement with the family.
 {¶ 33} The trial court found that reunification with Mother or Father would be futile. Based upon Mother and Father's past history, we find that the trial court did not err in finding that it was not necessary for ACCS to make further efforts to reunify Caleb with his biological parents. Thus, we overrule Father's third assignment of error.
 {¶ 34} Because the record contains some competent, credible evidence that Caleb is a neglected and dependent child, that granting ACCS permanent custody is in Caleb's best interest, and that implementing a reunification plan would be futile, we overrule Father's assignments of error. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion. Harsha, J.: Concurs in Judgment and Opinion to Assignment of Error I II; Concurs in Judgment Only to Assignment of Error III.