DECISION AND JUDGMENT ENTRY
{¶ 1} Ruby Buck ("Mother") appeals the decision terminating her parental rights and granting permanent custody of her child to the Scioto County Children Services Board ("SCCSB"). Mother contends that the trial court prejudicially erred in finding that SCCSB made reasonable efforts to unify her with this child, when, in fact, SCCSB made no efforts at all. We agree that the reasonable efforts finding was erroneous but conclude that it was harmless error. The mother's inability to care for her child stems from cognitive deficits that are not presently correctable. Thus, the only reasonable conclusion we can draw from the record is that attempting to implement a reunification plan would be futile. Unfortunately, this is one of those "extreme situations" in which the trial court can properly grant permanent custody as the initial disposition. Accordingly, we overrule Mother's assignment of error and affirm the judgment of the trial court.
 I. FACTS {¶ 2} Mother has seven biological children, four of whom she had with Millard Meadows, Sr. ("Father"). In 1999, SCCSB obtained permanent custody of Mother's three biological children from other relationships. SCCSB obtained permanent custody of one of Mother and Father's biological children in 2001. The Franklin County Children Services Board obtained permanent custody of two more of Mother and Father's biological children in 2002.
 {¶ 3} Mother and Father's remaining biological child, Millard Meadows, Jr., was born on September 8, 2003 at the Southern Ohio Medical Center in Scioto County, Ohio. Shortly after Millard's birth, his nurse became extremely alarmed after witnessing Father's behavior and Mother's apathy toward Millard. Specifically, she observed Father become angry with Millard while attempting to feed him. Father threw the bottle on the floor, dropped Millard on the bed, and began cursing Millard. Mother did not react at all to Father's behavior or attempt to care for Millard. The nurse was so alarmed that she feared for Millard's safety and felt uncomfortable leaving Millard alone with his parents. She took Millard to the nursery and contacted the social worker on call.
 {¶ 4} Three days after Millard's birth, SCCSB sought an ex-parte order for emergency temporary custody and a motion for permanent custody. In an order granting SCCSB temporary custody, the trial court found that the agency made reasonable efforts to prevent the child's removal.
 {¶ 5} SCCSB did not offer Mother or Father any services, such as parenting classes or a family aide, to help them achieve reunification with Millard. However, SCCSB did offer Mother and Father regular visitation with Millard. Mother attended eleven of the forty scheduled visits; Father attended four of the forty.
 {¶ 6} The trial court appointed a guardian ad litem for Millard, and appointed counsel for Mother and for Father. Additionally, the court appointed a guardian ad litem for Mother.
 {¶ 7} At the Adjudicatory Hearing in March 2004, Dr. Robin Rippeth testified that SCCSB asked her to conduct cognitive and intelligence testing on Mother and Father. Dr. Rippeth stated that she was unable to complete her evaluation of Mother because Mother did not show up for the second half of the testing. However, everything that Dr. Rippeth observed in Mother was consistent with the previous evaluations contained in Mother's SCCSB records, which described severe psychological and mental deficiencies beyond Mother's control. In essence, Mother had been diagnosed as borderline retarded and suffering from severe cultural deprivation. Father did not attend any of his scheduled appointments with Dr. Rippeth.
 {¶ 8} Based upon Dr. Rippeth's observations in the portion of the testing that Mother attended, her professional opinion was that Mother is not able to provide appropriate or assertive parenting to a young child. Mother's inability to parent appropriately is related to her cognitive limitations. Dr. Rippeth further testified that Mother's three previous failures with parenting classes, including in-home parenting classes, would be consistent with Mother's intellectual functioning capabilities. Dr. Rippeth predicted that Mother's parenting skills will not improve due to Mother's cognitive limitations. The trial court determined that Millard is a dependent child.
 {¶ 9} Subsequently, the trial court held the Dispositional Hearing where Dr. Joseph Carver testified about Mother's parenting abilities. Dr. Carver testified that he evaluated Mother in 1997 to determine her ability to profit from educational or rehabilitation efforts. Dr. Carver determined that Mother suffers major impairment in all areas of functioning. He concluded that Mother would have a great deal of difficulty benefiting from parenting classes due to her intellectual limitations.
 {¶ 10} SCCSB caseworker Karen Kinker also testified. Kinker testified that SCCSB has worked with Mother from 1997 through 2002, offering parenting classes, in-home parenting classes, and case management services. Kinker testified that SCCSB exhausted all the services it has to offer, and none were successful in reuniting Mother with her previous children. Kinker also testified that no other helpful services or programs have become available since SCCSB's last involvement with Mother.
 {¶ 11} Kinker testified that Millard is doing very well in his foster home and that his foster parents want to adopt him. Kinker further testified that Mother only attended one scheduled visitation during the past five and one-half month period, and has not seen Millard at all in three and one-half months. She also testified that Father has not visited Millard since November of 2003. Since SCCSB took custody of Millard, Mother has reported to Kinker that she resided in at least seven different places, including a garage, the back of a van in parking lot, and a place Mother refers to as a "dump."
 {¶ 12} Millard's guardian ad litem filed a report and recommendation in which he concluded that Mother is not capable of providing a home or appropriate care for Millard. The guardian ad litem recommended that the court grant SCCSB's motion for permanent custody.
 {¶ 13} The trial court granted SCCSB's motion and terminated Mother and Father's parental rights to Millard. Mother appeals, asserting the following assignment of error:
The trial court erred when it granted permanent custody of the minor child, Millard Meadows, Jr., to the [SCCSB] and found that reasonable efforts were made to prevent the removal of the child from the home and that efforts were made to return the child home.
 II. STANDARD OF REVIEW {¶ 14} Mother presents the general contention that the trial court erred in granting permanent custody to SCCSB. She also contests the finding that SCCSB made reasonable efforts to prevent Millard's removal from her home and to ensure his return. These contentions present a manifest weight of the evidence standard of review.
 {¶ 15} A permanent custody determination must be supported by clear and convincing evidence. In re Baby Girl Doe, 149 Ohio App.3d 717,2002-Ohio-4470, at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74; In re Hiat, (1993), 86 Ohio App.3d 716, 725. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. Id. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we can find that the record contains some competent, credible evidence to support the trial court's findings. Id.
 III. REASONABLE EFFORTS {¶ 16} Under R.C. 2151.419(A)(1), the trial court must determine whether the agency made reasonable efforts to prevent the continued removal of the children from the home before granting permanent custody to a public children's services agency. In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776, at ¶ 18. While a children services agency generally should make a good faith effort to reunite a dependent child with his biological parent, a reunification plan is not required where it would be futile to implement one. In re Leitwein, Hocking App. No. 03CA18, 2004-Ohio-1296, at ¶ 30;Elmer v. Lucas Cty. Children Serv. Bd. (1987), 36 Ohio App.3d 241, 244.
 {¶ 17} Here, the trial court found that SCCSB made reasonable efforts to prevent the removal of Millard from the home and to eliminate his continued removal from the home. Mother notes that SCCSB did not, in fact, make any efforts to reunify her with this child. This contention is technically correct. However, in connection with its finding, the trial court noted that SCCSB has a long and unsuccessful history of reunification attempts with Mother and her other children. The court also found that Mother's mental impairment is so severe that it makes Mother unable to benefit from reunification efforts such as parenting classes.
 {¶ 18} Although the agency made no efforts in this case, the mother's history with the agency and the evidence concerning her current cognitive deficiencies force us to conclude any reunification efforts would be futile. A finding that reunification would be futile would have been more appropriate than the apparent boilerplate language of the entry. But because the record clearly indicates that attempting to implement a reunification plan would be futile in this case, we hold the error was harmless.
 IV. PERMANENT CUSTODY AS AN INITIAL DETERMINATION {¶ 19} Mother also makes a general assertion that the trial court erred in granting permanent custody of Millard to SCCSB. A trial court should only grant permanent custody as the initial disposition in extreme situations where reunification is not possible. In re Crosten (Mar. 21, 1996), Athens App. No. 95CA1692; In re Smart (1984), 21 Ohio App.3d 31,35.
 {¶ 20} R.C. 2151.353(A)(4) provides that if a child is adjudicated abused, neglected, or dependent, the court may commit the child to the permanent custody of a children services agency "if the court determines in accordance with [R.C. 2152.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with [R.C.2151.414(D)] that the permanent commitment is in the best interest of the child."
 {¶ 21} R.C. 2151.414(D) enumerates five factors the court must consider in determining whether it is in a child's best interest to terminate parental rights. Those five factors are: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply. Under R.C. 2151.414(E), the court also must find that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 22} In making the determinations required under R.C. 2151.414(D), the court cannot consider the effect granting permanent custody will have upon the child's parents. R.C. 2151.414(C). Moreover, a child does not first have to be put into a particular environment before the court can determine that the environment is unhealthy or unsafe. In re Barnhart,
Athens App. No. 05CA8, 2005-Ohio-2692, at ¶ 24, citing In re Bishop
(1987), 36 Ohio App.3d 123, 124; In re Campbell (1983),13 Ohio App.3d 34, 36. "The unfitness of the parent, guardian or custodian can be predicted by past history." Bishop at 126; In re BabyBoy Eddy (Dec. 6, 1999), Fairfield App. No. 98AB36.
 {¶ 23} Here, the trial court made factual findings relating to the R.C. 2151.414(D) factors for determining Millard's best interests. Concerning Millard's interrelationship with Mother and others, the trial court found that Mother has not bonded with Millard and that she has visited Millard on only eleven of forty scheduled visitations. Additionally, Millard is doing well in foster care and his foster parents would like to adopt him. Concerning Millard's custodial history, the trial court noted that SCCSB has had custody of Millard since birth. The trial court also found that Millard needs and deserves a legally secure placement. The record clearly supports those findings.
 {¶ 24} The court also looked to the factors enumerated in R.C.2151.414(E) to determine whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The trial court noted that SCCSB or another children services agency has assumed permanent custody of all of Millard's six siblings. See R.C. 2151.414(E)(11). Additionally, the trial court found that Father has made no effort to reunite with Millard and that he has abandoned the child. See R.C. 2151.414(E)(10).
 {¶ 25} The trial court also found, under R.C. 2151.414(E)(2) and (16) that Millard cannot be placed with either of his parents within a reasonable time. R.C. 2151.414(E)(2) refers to a parent's mental retardation or severe chronic disability that will render the parent unable to provide an adequate home for the child within a one year period, while R.C. 2151.414(E)(16) refers to any other factor the court deems relevant.
 {¶ 26} The trial court noted that Mother's intellectual capabilities are so limited that she is unable to learn to make the changes necessary to provide her child with an adequate home. Additionally, the trial court noted that Mother is not motivated to change. Mother does not see any problem with the fact that she has lived in seven places over ten months, including in a garage and in the back of a van. Nor does she seem motivated to change the fact that she lacks income and relies upon church handouts for food. The SCCSB caseworker indicated that Mother has exhausted all of the services that SCCSB has to offer, with no improvement. The court concluded that the mental condition of Mother is so severe that it renders her unable to provide an adequate home for Millard within one year.
 {¶ 27} We often caution our colleagues who are charged with the weighty responsibility of terminating parental rights to use permanent custody sparingly in the context of an initial disposition. However, we agree with the trial court that this is one of those rare situations where it is in the child's best interest.
 {¶ 28} Because the record contains clear and convincing evidence that implementing a reunification plan would be futile, that Millard cannot or should not be placed with either parent, and that granting SCCSB permanent custody is in Millard's best interest, we overrule Mother's assignment of error.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment Only.