DECISION AND JUDGMENT ENTRY
{¶ 1} Randall Elliott (Father) appeals the Washington County Juvenile Court's award of permanent custody of his children to Washington County Children Services (WCCS). Father contends that the trial court abused its discretion by finding that it was in the best interest of the children to permanently terminate his parental rights. Because we find some competent and credible evidence to support the trial court's award of permanent custody to WCCS, we affirm.
 I. Procedural History {¶ 2} In February 2002, the trial court awarded WCCS emergency custody of Natasha (D.O.B. 9/8/94) and Kasey (D.O.B. 9/13/97) Elliott. WCCS filed a complaint alleging the children to be neglected and dependent and was awarded temporary custody. The trial court found the children to be dependent under R.C.2151.04(C) in April, 2002, and the children remained in the temporary custody of WCCS. In July 2003, WCCS filed a motion requesting permanent custody, which the trial court granted. In May 2004, we reversed the trial court's grant of permanent custody based upon procedural irregularities. See, In the Mtr.of Natasha Lea Elliott and Kasey Jo Elliott, Washington App. Nos. 03CA65, and 03CA66, 2004-Ohio-2770.
 {¶ 3} WCCS then filed an amended complaint alleging the children to be neglected and/or dependent. The trial court found the children to be dependent under R.C. 2151.04(C) and also neglected children under R.C. 2151.03(A)(2). The parties did not appeal these findings.
 {¶ 4} Subsequently, the trial court held a dispositional hearing to determine whether WCCS would receive permanent custody of the children. The court concluded that by clear and convincing evidence it is within the best interest of the children to be placed in the permanent custody of WCCS. The court found that for the purposes of R.C. 2151.414(B)(1)(d), the children have been out of their parents' home and in the custody of WCCS since April 2002, a period of over forty-one months. Further, the trial court found that: 1) the parents have failed to provide on a regular basis a suitable, safe, clean, healthy and nurturing environment for the children; 2) all of the children's needs are being met by their foster family, and they have bonded to them; 3) the parents are unable to offer the children an acceptable level of care given the children's special needs and the parents' own limited abilities and limited parenting skills; and 4) the parents cannot provide the children with stability, a nurturing environment, or permanency in their lives.
 {¶ 5} Father appeals the trial court's grant of permanent custody and asserts the following assignment of error:
THE JUVENILE COURT ABUSED ITS DISCRETION BY FINDING THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF THE PARENTS.
 II. The Children and their Environment {¶ 6} The record reveals both children suffer from "developmental delays." Natasha, the older child, is developmentally handicapped. Her IQ places her in the moderate range of mental retardation, and she has reading, writing and math delays. Kasey is borderline developmentally delayed. She suffers from Attention Deficit Hyperactivity Disorder and takes medication for it. Accordingly, both children require a home environment that provides structure, routine and predictability.
 {¶ 7} Lisa Newbrough (Mother) tested in the borderline range of mental retardation. She is unemployed and receives social security disability payments. At the dispositional hearing, Dr. Richard Jackson testified for WCCS that based on Mother's mental and developmental health, she would have a very difficult time parenting and providing a healthy environment for her children. The parenting problems created by the mother's lack of cognitive skills were also heightened by her children's own handicaps. Stacia Westbrook, a case worker at WCCS, testified that in order for Mother to care for her special needs children, she would need assistance from various agencies for months, or even years.
 {¶ 8} Case workers from WCCS testified they do not believe Mother's house is a suitable environment for the children. Mother did clean her home for the most recent visit of WCCS, but it remained cluttered. The case workers do not believe the house will stay clean. Rather, they predict it will revert back to a deplorable condition, as it has consistently done in the past, i.e., with dirty dishes scattered around, food left out, the presence of roaches, and too many animals living inside.
 {¶ 9} Michelle Headley testified for WCCS that Father has anger management problems. She indicated he had difficulty managing his feelings and temper, and it impacted his ability to parent during supervised visits. Father testified that if he received custody of the children, he would not permit case workers from WCCS to visit the children. He testified that if Westbrook ever came to his residence for a home visit or any other reason, he would protect his property with his gun.
 {¶ 10} Stacia Westbrook testified for WCCS that Father's residence is not suitable environment for the children. Father resides in a trailer owned by his mother, who stores her belongings in this trailer. She indicated the trailer is so cluttered that the only spaces open enough to permit walking are the areas from the front door to the kitchen and into Father's bedroom.
 {¶ 11} Over the last five years, both parents have repeatedly accused each other of sexually abusing their children. As a result, the children have undergone physical examinations on at least four occasions but no evidence of sexual abuse was ever substantiated. The continuous accusations have caused serious emotional harm to the children according to the agency.
 {¶ 12} WCCS has been involved with the parents since 1994. The agency has provided services such as environmental education, parenting skills, parenting education, nutritional information, counseling, and transportation for the family for the last ten years. WCCS has received forty-six referrals concerning Natasha, and thirty-nine concerning Kasey.
 {¶ 13} The children were placed for an extended visit with Mother in August, 2002. They were removed on December 2, 2002, due to noncompliance with the case plan and due to the condition of the home, which was infested with roaches and smelled from dog urine and waste. In order to clean the home, Mother removed fifteen bags of trash after the children were removed. Also, Mother failed to schedule counseling for the children during their visit, despite numerous reminders from WCCS.
 {¶ 14} The children have been out of Mother's home since February of 2002, except for approximately four months from August 2002, until December 2002, during the attempted extended visit with Mother. The children have never been placed in the care of Father.
 {¶ 15} The children are now well-adjusted to living with their foster parents, Mark and Renee King. The children refer to them as "Mom" and "Dad." They share a bedroom and have their own clothes, a play room, and pets. Westbrook testified that she has witnessed an improvement in the children's behavior since living with the Kings, and they are in a much more structured environment. Furthermore, she testified that she believes the children would regress if placed back in the care of Mother.
 {¶ 16} In his closing argument, William Adams, attorney and Guardian Ad Litem for the children, stated that Natasha evidenced a desire to stay with the foster family that she is currently living with, and she directed him, as Guardian Ad Litem, to attempt to secure that they remain living in the same conditions.
 III. Best Interest of the Children {¶ 17} Father contends that the trial court abused its discretion by finding that it was in the children's best interest to terminate their parental rights. He specifically contests the court's finding that the parents cannot provide the children with an acceptable level of care and a secure permanent placement.
 {¶ 18} An abuse of discretion is more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable. Masters v. Masters (1994),69 Ohio St.3d 83, 85, 630 N.E.2d 665. Moreover, when applying this standard, an appellate court may not substitute its judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 19} Under R.C. 2151.414(A) and 2151.414(B), before a court may grant permanent custody of a child to a children services agency it must determine by "clear and convincing evidence" that such placement is in the best interest of the children. In making this determination, the court is required to consider all relevant factors, including:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. See R.C.2151.414(D).
 {¶ 20} As already noted, the best interest determination must be supported by "clear and convincing evidence." See In reMeyer (1994), 98 Ohio App.3d 189, 195. "Clear and convincing evidence" is defined as a measure or degree of proof that is more than a mere "preponderance" of evidence, but not to the extent of such certainty as the "beyond a reasonable doubt" standard in criminal cases, and that provides in the trier of fact's mind a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122, 568 N.E.2d 1222. When reviewing whether the "clear and convincing standard" is satisfied, an appellate court must affirm judgments supported by some competent, credible evidence. In re Hiatt (1993), 86 Ohio App.3d 716, 725,621 N.E.2d 1222. Accordingly, we may not merely substitute our judgment for that of the trial court.
 {¶ 21} In this case, the record contains competent and credible evidence supporting the trial court's conclusion that it is in the best interest of the children to be placed in the permanent custody of WCCS. Looking first at R.C. 2151.414(D)(3), it is clear that the children have been in the temporary custody of WCCS since April 2, 2002, except for approximately four months in 2002 for an attempted extended visit with Mother. Therefore, WCCS has had temporary custody over the children for over thirty-seven months out of the last forty-one months, and continuously since December, 2002.
 {¶ 22} In considering R.C. 2151.414(D)(1), the record reveals the children have had poor interaction and relationships with Mother and Father. This is due mainly to Mother's handicaps, Father's anger management issues, and both parents' lack of suitable living conditions. Furthermore, the children have had successful interactions and relationships with their foster family, the Kings. The children have shown improvement in school and test scores, and Natasha specifically requested her Guardian Ad Litem to ensure that they remain living with the Kings.
 {¶ 23} Next, looking to R.C. 2151.414(D)(4), it is apparent the children need special care and a permanent, structured environment because of their developmental delays. Mother and Father have failed to provide the children with a suitable environment that is safe, clean, healthy, and nurturing. Furthermore, because of the children's special needs and Mother and Father's own limited abilities and limited parenting skills, the record substantiates the trial court's conclusion that Mother and Father are unable to offer the children an acceptable level of care. The children have been provided with a suitable living environment with the Kings, and have shown improvements while living there.
 {¶ 24} We do discourage trial courts from routinely basing their permanent custody decisions solely upon past history. However, in extreme situations, the current and future unsuitability of parents may be predicated upon past behavior. Likewise, the statutes discourage permanent termination where some reasonable hope exists that parenting skills can be improved. But where a parent's cognitive ability is so permanently deficient that the individual is not capable of meaningfully improving the lack of parenting skills, termination may be appropriate. See In the Mtr. of Millard Meadows, Jr.
(Sept. 20, 2005), Scioto App. No. 05CA3009, 2005-Ohio-5018
(upholding trial court's decision granting permanent custody to children services board where mother's inability to parent appropriately was due to her cognitive limitations). See also,In the Mtr. of Elisha Cozad (May 9, 2005), Lawrence App. No. 04CA36 2005-Ohio-5018 (upholding trial court's conclusion that evidence supported the termination of parental rights where mother was unable to consistently maintain a clean, suitable living environment without constant supervision and help).
 {¶ 25} Accordingly, the trial court did not abuse its discretion in awarding permanent custody to the agency. We overrule Father's assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J: Concurs in Judgment and Opinion.
McFarland, J: Concurs in Judgment Only.