OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Joanne Boston, filed October 4, 2005. Mrs. Boston appeals the juvenile court's decision adopting the magistrate's decision to grant legal custody of her oldest daughter, A.W., age 16, to Douglas Wantz, A.W.'s biological father. Mr. Wantz lives in Butler Township, Ohio, with his wife, Pam Wantz, and their daughter, O.W., and Pam's sons, C.C. and Z.C. Mrs. Boston has two other daughters, A.B. and A.B., with her husband, Kevin Boston. A.B. and A.B reside with Mrs. Boston in Kettering, Ohio. On February 13, 2003, Kevin Boston pled guilty to two counts of sexual battery for sexually molesting A.W., and in March of 2003, A.W. was adjudicated abused and dependent. Mr. Boston was sentenced to two concurrent years in prison on each count.
 {¶ 2} Doris and Harold Warren, A.W.'s maternal grandparents, received temporary custody of A.W. on August 12, 2003, and Montgomery County Children's Services ("MCCS") assumed protective custody of A.B. and A.B. Mr. Wantz filed a motion for legal custody of A.W. on August 4, 2004. Mrs. Boston filed a motion for legal custody of A.W., or in the alternative, a motion for legal custody to A.W.'s maternal aunt, Donna Warren. The temporary custody arrangement with the grandparents failed, and the court ordered interim custody to Mr. Wantz. After lengthy hearings, the magistrate awarded Mr. Wantz legal custody of A.W. and retained protective supervision over A.B. and A.B. The juvenile court adopted the magistrate's decision regarding custody of A.W. on September 23, 2005. In doing so the court also determined that it is in A.W.'s best interest for Mrs. Boston to have limited parenting time every other Saturday from 10:00 a.m. to 6:00 p.m. and to have telephone time with A.W. on Mondays and Thursdays between 9:00 p.m. and 10:00 p.m., for up to 25 minutes.
 {¶ 3} In October of 2004, Mr. Boston was granted judicial release and placed on community control sanctions. As a condition of community control, Mr. Boston is not allowed to reside with Mrs. Boston in their Kettering home. On November 29, 2004, Mr. Boston filed a motion to modify his community control sanctions to allow him to reside with his family.
 {¶ 4} Ms. Boston's first assignment of error is as follows:
 {¶ 5} "WHETHER THE COURT'S DECISION TO GRANT LEGAL CUSTODY OF A.W. TO HER BIOLOGICAL FATHER WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF SUFFICIENT EVIDENCE OR WITH CLEAR AND CONVINCING EVIDENCE AND WAS A RESULT OF ABUSE OF DISCRETION, AND THEREBY VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION."
 {¶ 6} "If a child is adjudicated an abused * * * or dependent child, the court may * * * [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." R.C. 2151.353(A)(3). "[W]hen determining whether or not to grant an individual or couple legal custody of a dependent child, a court can do so if it finds by a preponderance of the evidence that it is in the best interests of the concerned child. Preponderance of the evidence simply means `evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' (Internal citations omitted.) The clear and convincing evidence standard is a higher degree of proof than the preponderance of the evidence standard generally utilized in civil cases * * *. Clear and convincing evidence is that which produces in the mind of the trier of fact a firm belief or conviction in the proposition sought to be established." In the Matter of Kaylee Starks, Darke App. No. 1646, 2005-Ohio-1912. "[B]efore a court may grant permanent custody of a child to a children services agency it must determine by `clear and convincing evidence' that such placement is in the best interest of the [child]." In the Matter ofNatasha Lea Elliott, Washington App. No. 05CA53, 2006-Ohio-1618. A higher standard of proof is appropriate when permanent custody is at issue because such a drastic remedy involves the termination of parental rights.
 {¶ 7} "On appeal, we will not reverse an award of legal custody absent an abuse of discretion. (Internal citations omitted.) Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. (Internal citations omitted.) However, `the discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' (Internal citations omitted.)
 {¶ 8} "* * *
 {¶ 9} "[T]he standard for assessing the manifest weight of the evidence is as follows: `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury (factfinder) clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" In the Matter of Kaylee Starks.
 {¶ 10} "Sufficient probative evidence and manifest weight are reviewed under different standards. (Internal citations omitted.) A claim of insufficient evidence requires a determination that any rational trier of fact could find all essential elements of the cause given the appropriate standard of proof, after viewing but not weighing the probative evidence and construing all reasonable inferences not favorable to the party with the burden of proof." In the Matter of Kelley Children (June 27, 1994), Stark App. No. CA9495.
 {¶ 11} A.W. made it clear to the court in an in camera interview that she did not want to live with Mr. and Mrs. Wantz but would rather live with her mother or Donna Warren.
 {¶ 12} A.W.'s counselor, Ms. Roberta Staigers, who has treated A.W. for approximately three years, provided expert testimony regarding A.W.'s relationship with her parents. According to Ms. Staigers, Mrs. Boston's continued loyalty to Mr. Boston has had an unhealthy effect on A.W. in that it minimizes the sexual abuse she suffered. Ms. Staigers described A.W.'s relationship with her mother as "enmeshed." Ms. Staigers testified that "A.W. has a difficult time separating herself from the need to have her mother's approval, so that it's very hard for her to really stand on her own and make independent statements and observations without worrying what the repercussions will be regarding her mother's approval of her statements."
 {¶ 13} Further, Ms. Staigers testified that Mrs. Boston did not approve of A.W.'s placement with her grandparents, and that Mrs. Boston does not approve of A.W.'s placement with her father, and that her disapproval creates conflict for A.W. "A.W. has a lot of loyalty issues. She's very conflicted, and she's very invested in having * * * the approval of her mother. So, she often feels if she chooses to invest over here, then what's going to happen over here on the side with her mother. [S]he's very much caught in the middle of this situation." Mrs. Staigers testified how "really beneficial" it would be for A.W. if she could only have "her mother's blessing to be happy wherever she's living."
 {¶ 14} In contrast, Ms. Staigers had no concerns about the care A.W. was receiving in her father's home: "They try to be good parents. They set limits, they try to do a lot of loving, nurturing, fun activities together. They also try to hold [A.W.] to a level of accountability and responsibility for her school work and chores and things like that. So, I guess it would be, you know, in a loving, parental capacity."
 {¶ 15} Mr. Wantz testified that he did not have contact with A.W. for a period of approximately two and a half years prior to February of 2003 because he left it up to A.W. to contact him. He stated that he regrets not being a part of her life during that time. He testified that he is temporarily working in Florida, pursuing economic opportunities in the construction industry following the numerous hurricanes that hit that region. He maintains contact with his family several times a day, and he returns to Ohio every two weeks to see them. Mrs. Wantz testified that she home schools A.W. along with the other children in her home. When A.W. lived with her mother, she attended Fairmont High School, and she told Mrs. Wantz that she did not want to attend Vandalia-Butler High School but instead wanted to be home schooled.
 {¶ 16} Chris Sheets, an ongoing case worker at MCCS, testified that the agency did not recommend that Mrs. Boston receive custody of A.W. because "of the intent of Kevin to return to the home," and because Mrs. Boston failed to complete the psychological and parenting assessment portion of her MCCS case plan. He also expressed the agency's concerns about the fact that Mrs. Boston initially blamed A.W. for the abuse. Mr. Sheets testified that the agency believed that it was in A.W.'s best interest for custody to be granted to Mr. Wantz: "Mr. Wantz has been meeting the basic needs of A.W. He has shown a willingness to protect her. And, although their relationship is far from great, I've seen some — some signs that it's improving."
 {¶ 17} Mr. Sheets also stated that the Agency did not believe that it would be appropriate for Donna Warren to have custody of A.W. Ms. Warren's home did not pass the home study the agency conducted, and she was financially unable to assume responsibility for A.W. She also works nine hours a day during which time A.W. would be unsupervised.
 {¶ 18} The trial court also considered the December 13, 2004 report of A.W.'s guardian ad litem, in which he recommended that legal custody of A.W. be given to Mr. Wantz. According to the report, "the only thing preventing [A.W.] from returning to her Mother's home is Mother's behavior. Mother has had ample time to finish the case plan. Even if a psychological/parenting assessment called for counseling and a parenting class, Mother could have either finished or shown enough of a commitment to have A.W. placed back in her home. However, that commitment has not happened." The guardian further opined that A.W.'s relationship with her mother "is not a healthy relationship. Mother has continued to demonstrate that her commitment is to Kevin and not A.W. This is best demonstrated by the fact that A.W. has not had full weekend visits with Mother since Kevin was released."
 {¶ 19} Mrs. Boston's testimony confirmed that the concerns of the guardian ad litem and MCCS services regarding Mrs. Boston's loyalty were justified. She testified that she has "been told that there's not a — not a chance of [A.W.] coming home as long as I stay married to my husband. Otherwise, I would love to have my daughter home with me." She stated that she wants Mr. Boston to come back to her home because "he has two other small children who very much need a father." Mrs. Boston testified that the fact that Mr. Boston harmed A.W. did not cause her to question his judgment around the other two girls and that "it has not been proved that he is a harm to the two children * * * at home." The Semiannual Administrative Review, completed on January 3, 2005, by MCCS states that a concern of the agency is that "Mr. Boston stated, `I believe I may be showing some signs of sexual addiction,' which may place his own and other children at risk of sexual abuse." Mrs. Boston blamed the guardian ad litem for Mr. Boston's lack of access to her home, stating that she did not think Mr. Boston "has particular blame for being out of the home right now."
 {¶ 20} She testified that she was taking parenting classes, receiving the necessary counseling, and completing the psychological and parenting assessments necessary to complete her case plan. When asked why she waited over two years to begin the process as set forth in her case plan, she replied that she delayed getting started based on a Dateline NBC episode in which a woman lost custody of her children due to the results of a psychological evaluation. She also stated that, since she would never get custody of A.W. as long as she remained married to Mr. Boston, she "didn't see one way or another what difference it made if I completed the psych eval." Finally, Mrs. Boston testified that she does not have steady employment and that her house is in foreclosure.
 {¶ 21} The trial court did not err in finding that it is in A.W.'s best interest to be in the legal custody of Mr. Wantz. He clearly provides the type of structured family environment and protection that she needs. Also, the trial court correctly found that Mrs. Boston is committed to Mr. Boston and not to A.W. Further, the trial court correctly determined that Ms. Warren would not be able to meet A.W.'s needs. We agree with the trial court that, due to Mrs. Boston's behavior and the emotional upheaval contact with her causes A.W., it is in A.W.'s best interest that Mrs. Boston have limited parenting time with her daughter to create "the opportunity to get a little distance and begin accepting the adjustments between the two lives." Having reviewed the entire record thoroughly, we conclude that the trial court's decision was neither against the manifest weight of the evidence nor an abuse of discretion. Sufficient evidence establishes that legal custody should be granted to Mr. Wantz. Mrs. Boston's first assignment of error is overruled.
 {¶ 22} Mrs. Boston's second assignment of error is as follows:
 {¶ 23} "WHETHER THE CHILDREN'S AGENCY DID NOT MAKE REASONABLE EFFORTS TO SATISFY ITS DUTY TO FACILITATE REUNIFICATION OF ALL THREE CHILDREN TOGETHER WITHIN ONE FAMILY AND THEREBY VIOLATED THE MOTHER'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH,SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION."
 {¶ 24} MCCS developed a case plan, as required by R.C.2151.412, listing objectives for Mr. and Mrs. Boston and Mr. Wantz. Mrs. Boston's objectives were to enroll A.W. in therapy, participate in therapy as requested, refrain from placing blame on A.W. and have psychological and parenting assessments. Mr. Boston's objectives were to have a SOAP assessment, psychological and parenting assessments, and not to have any face to face contact with A.W. unless court approved. Mr. Wantz's objective was to participate in therapy as requested. MCCS also provided case management services, information and referral services, home study services, and visitation services to the family.
 {¶ 25} The record makes clear that it was Mrs. Boston, and not MCCS, who failed to make reasonable efforts to facilitate reunification. Mrs. Boston's unwavering support of and commitment to Mr. Boston, a sexually oriented offender who sexually abused her daughter, and her failure to complete her case plan objectives, as discussed above, are the reasons that reunification efforts failed. Mrs. Boston's second assignment of error lacks merit and is accordingly overruled. The judgment of the trial court is affirmed.
Grady, P.J. and Brogan, J., concur.