DECISION AND JUDGMENT ENTRY
{¶ 1} Laurel Pettiford appeals the Ross County Common Pleas Court, Juvenile Division, judgment granting Ross County Job and Family Services, Children's Division (RCJFS), permanent custody of her three sons, Eric Pettiford (born January 27, 1991), Dreon Pettiford (born March 6, 1997), and Denzel Pettiford (born May 25, 2001). The mother first asserts that the court's judgment is against the manifest weight of the evidence. She contends that the court improperly determined that the children cannot or should not be returned to her within a reasonable time and that the children's best interests would be served by awarding RCJFS permanent custody. Because the record contains some evidence that the mother failed to remedy the conditions that led to the children's removal, that the mother's actions demonstrate a lack of commitment to the children, and that she has been unwilling to provide an adequate permanent home for them, the court's finding that the children cannot or should not be returned to the mother within a reasonable time is not against the manifest weight of the evidence. Additionally, the record contains some evidence that the children's best interests would be served by awarding RCJFS permanent custody. Thus, the mother's first argument is meritless.
 {¶ 2} The mother next asserts that the trial court's decision violates the Equal Protection and Due Process Clauses of the United States and Ohio Constitutions. She basically contends that the court's decision discriminates against her because she is poor. Because the mother failed to properly raise this issue in the trial court, she waived the argument for appellate review. In any event, the evidence shows that the mother lacked motivation, not just funds, to find housing. Therefore, we overrule her second assignment of error and affirm the court's judgment.
 I {¶ 3} In June of 2003, the mother voluntarily placed her children in RCJFS's custody because she did not have a home for them. She stated that she would look for appropriate housing.
 {¶ 4} On July 25, 2003, RCJFS filed complaints alleging that the children are dependent and requesting temporary custody. The complaints alleged that: (1) the mother did not have suitable housing for her children but was in the process of looking for housing; and (2) the visitation monitor reported that the mother screamed and cussed at the children during visitations and that she did not have positive interaction with the children.
 {¶ 5} On July 25, 2003, the court granted RCJFS emergency custody of the children.
 {¶ 6} On September 4, 2003, RCJFS filed a case plan that addressed the following concerns: (1) the children's emotional and behavioral problems; (2) the children need a responsible adult to care for them; (3) the children will be free from abuse or neglect; and (4) the mother will understand that her problems affect her ability to effectively parent her children.[1]
The case plan required the mother to: (1) refrain from physically or verbally abusing her children; (2) attend parenting classes; (3) find housing for the family; and (4) participate in family counseling and parenting classes.
 {¶ 7} On October 23, 2003, the mother admitted the dependency allegations and the trial court adjudicated the children dependent.
 {¶ 8} On July 21, 2004, RCJFS filed permanent custody motions. RCJFS alleged that the children have been out of their mother's care for over one year and that the mother has not completed the case plan because she failed to locate a home, failed to complete parenting classes, and failed to participate in family counseling.
 {¶ 9} On February 10, 2005, the guardian ad litem filed a report. He noted that RCJFS filed the permanent custody motion "because the children's mother had not provided a permanent and stable home, nor had she completed required counseling, by the time the children had been in foster care for a year. After the motion was filed, [the mother] and her boyfriend rented a house, and began activity to attempt to comply with [the case plan] requirements." The guardian noted that the mother asked RCJFS to place her older children but she kept an infant and became pregnant again. He stated that she has not cooperated and has not kept the caseworker informed of her new address. The guardian stated that the children "have had a significant benefit" by being placed in their current foster home. The guardian recommended that the court grant RCJFS permanent custody.
 {¶ 10} At the permanent custody hearings held in April and August of 2005, RCJFS Caseworker Monica Drake testified that in June of 2003, the mother refused cash assistance for housing, but she started receiving it in August of 2004. In June of 2003, she applied for "PRC," which provides emergency assistance, "but she failed to cooperate with the requirements." She had advised the mother that she was eligible for cash assistance, but because the mother could not receive both child support and cash assistance at the same time, and because her child support was greater than the cash assistance, the mother declined cash assistance for housing. Drake testified that in August of 2004, after RCJFS filed the permanent custody motions, the mother applied for cash assistance. Drake stated that the mother violated the food stamp program requirements by failing to provide a correct address, and she was disqualified from the program.
 {¶ 11} Integrated Service System Professional Clinical Counselor Helen G. Lehman testified that she counseled with the mother, Eric, and Dreon. She stated that Eric had "much concern" about being returned to his mother's care. She stated that "[h]e is concerned that if he goes back home to Mom that he will once again be moving every one to two months, not be able to maintain in the same school, have to lie about why he is not going to school or to the same school, that his grade that — that he will basically fail. He is concerned that if he goes back home he will once again have to care for his younger siblings and not be able to participate in after school activities or things that he does now." She stated that he has improved while undergoing counseling. She does not believe reunifying Eric with his mother is in his best interests due to the instability he would encounter. She counseled Dreon because he had some disruptive behavior. She would not recommend that Dreon be reunified with his mother.
 {¶ 12} RCJFS visitation monitor Melissa Nelson testified that she arranged visits between the children and their mother. Nelson stated that the mother visited regularly and participated in the visitations. She recounted a couple of negative encounters when the mother reacted inappropriately with the children by yelling at them.
 {¶ 13} Annette Valley, the former administrator of the school the boys attend, testified that when Dreon first enrolled at the school, he "could barely carry on a conversation." She stated that he "did know how to sit in a chair" and "he did not know what school was about even though he was six years old." She stated that "he didn't know his sounds, he didn't know the alphabet, he couldn't count. And like I said he didn't talk." Since he started foster care, his verbal skills have improved. Denzel started as a three year old. He could not speak at first, but he adjusted well to the preschool. When Eric enrolled, he was about thirteen years old. Valley stated that Eric was a little rebellious at first but eventually settled down and achieved good grades.
 {¶ 14} RCJFS employee Marsha Stewart testified that the mother did not complete two hours of the twelve hour parenting course series.
 {¶ 15} RCJFS Caseworker Teresa Babb testified that the mother entered into a voluntary placement contract with RCJFS in June of 2003. When it expired, the mother did not return for the children, so RCJFS requested temporary custody. The children have been in RCJFS's temporary custody since July 25, 2003. She stated that the conditions that led to the children's removal have not been remedied. She stated that the mother's case plan objectives included finding appropriate housing for the children, attending parenting classes, and attending family counseling.
 {¶ 16} In July of 2003, the mother was not doing anything to obtain suitable housing. At that time, the mother had an income and thought she would be able to find housing on her own. Thus, the mother did not want help from Metropolitan Housing. Babb stated that in the spring of 2004, the mother applied for assistance from Metropolitan Housing.
 {¶ 17} Babb testified that at the outset of the case, the mother had been living in a small camper at a campground with her boyfriend and a new baby. She explained that although it was sufficient for the three of them, it could not house the remaining children. The mother remained there for three or four months. She then stayed with her mother and afterwards, Babb did not know her whereabouts. The mother told Babb that she was living with a relative but that Babb could not visit the home.
 {¶ 18} Babb testified that when RCJFS filed the permanent custody motions, Babb did not know where the mother was living. As of July 21, 2004, when RCJFS filed the permanent custody motions, the mother had not obtained suitable housing.
 {¶ 19} Babb testified that in October of 2004, the mother rented a house on Western Avenue. When Babb first visited the house, she did not find it suitable. It needed repairs and two of the three bedrooms were full of junk and uninhabitable. She also stated that there were two refrigerators in the kitchen. Babb testified that on her second visit, the home remained the same. During one of her subsequent visits, the home was better and then during the next visit, it was worse. Babb stated that in February or March of 2005 the house had become "acceptable and very comfortable."
 {¶ 20} Babb testified that the mother visits with the children, the visits go well, and she gets along well with the children. She misses about one visit every three to four weeks because the baby will be sick, her asthma acts up, she does not have transportation, or she is ill. She does not feel that there is a strong bond between the mother and the two younger boys.
 {¶ 21} When Babb testified at the August 2005 permanent custody hearing, she stated that the mother had completed the case plan. As of August of 2005, the mother lived in a suitable three bedroom home with the two young children and her boyfriend.
 {¶ 22} Freda Endicott, the children's foster parent, testified that the children are doing well. She stated that when the children first came into her home, the youngest could not talk. Eric had problems running away from other foster homes but he has not had problems in her home. Dreon had problems wetting the bed but he no longer does. She testified that the children have gained weight while in her care.
 {¶ 23} On October 12, 2005, the magistrate found that: (1) the children have been in RCJFS's custody since June 26, 2003; (2) when RCJFS filed the permanent custody motions, the mother had not remedied the conditions that caused the children's removal and she had not completed the case plan goals; (3) in March of 2005, the mother obtained suitable housing where she lives with her boyfriend; (4) before March of 2005, the mother had not maintained suitable housing and for awhile, her whereabouts were unknown; (5) the mother has had two children during the pendency of the case; (6) the mother is unemployed and was disqualified for public assistance due to fraud; (7) the children have adjusted well in foster care and have made significant progress in school; (8) the mother's past history does not support a finding that she can maintain her current housing and provide a stable home for the children; (9) the children should not be reunified with their mother; (10) it is in the children's best interests to be placed in RCJFS's permanent custody.[2]
 {¶ 24} On October 19, 2005, the mother filed objections to the magistrate's findings that: (1) the children have been in RCJFS's custody since June 26, 2003; (2) the mother had not remedied the conditions that caused the children's removal; (3) the mother obtained suitable housing in March of 2005; (4) she was unable to maintain suitable housing until March of 2005, and for awhile her whereabouts were unknown; (5) the mother's past history does not support a finding that she can maintain a stable home for the children; and (6) the children should not be reunified with their mother.
 {¶ 25} On December 27, 2005, the trial court overruled the objections, except it amended the magistrate's decision to read that the mother had not completed the majority of the case plan goals at the time RCJFS filed its motions for permanent custody. It then adopted the magistrate's decision, as amended, and granted RCJFS's permanent custody motions.
 {¶ 26} The mother timely appealed the trial court's judgment and assigns the following errors: I. "The trial court's decision is against the manifest weight of the evidence." II. "The trial court's decision violates the equal protection clauses of both the State and Federal Constitutions, as well as substantive due process considerations."
 II {¶ 27} Initially, we note that the mother failed to request findings of fact and conclusions of law. Civ.R. 52 provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." The failure to timely request findings of fact and conclusions of law waives the right to challenge the trial court's lack of an explicit finding with respect to an issue. See Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 801, 673 N.E.2d 188; Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 2531; Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99CA4. "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts."Fallang v. Fallang (1996), 109 Ohio App.3d 543, 549,672 N.E.2d 730; see, also, In re Barnhart, Athens App. No. 02CA20, 2002-Ohio-6023.
Unless a party requests findings of fact and conclusions of law, a court need not expressly set forth the factual findings relating to each statutory factor in its judgment entry. See Inre Dyal, Hocking App. No. 01CA12, 2001-Ohio-2542, fn. 3.
 {¶ 28} In the case at bar, to the extent the mother asserts that the court failed to enter appropriate statutory findings under R.C. 2151.414, she has waived the argument and we will not consider it.
 III {¶ 29} In her first assignment of error, the mother asserts that the trial court's decision is against the manifest weight of the evidence. She argues that clear and convincing evidence does not show that the children cannot or should not be returned to her within a reasonable time and that none of the other R.C.2151.414(B)(1) factors apply. She further contends that clear and convincing evidence does not support the court's decision that awarding RCJFS permanent custody would serve the children's best interests.
 A Standard of Review {¶ 30} A trial court may not grant a permanent custody motion unless clear and convincing evidence supports it. "Clear and convincing evidence" is:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04,495 N.E.2d 23; see, also, State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 31} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the record shows some competent, credible evidence supporting the trial court's decision, we must affirm the court's decision, regardless of the weight we might have chosen to assign the evidence. See In reM.E., Cuyahoga App. No. 86274, 2006-Ohio-1837. Thus, our review of a trial court's permanent custody decision is deferential. SeeIn re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17.
 {¶ 32} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273:
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In reChristian, Athens App. No. 04CA10, 2004-Ohio-3146; In re C.W.,
Montgomery App. No. 20140, 2003-Ohio-2040.
 B Permanent Custody Standard {¶ 33} While a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children, the parent's rights are not absolute. Santosky v. Kramer
(1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In reMurray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034
(quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands it.
 {¶ 34} A children services agency that has temporary custody of a child may file a permanent custody motion. See R.C.2151.413(A). Before the court may award the children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 35} A trial court may not grant a permanent custody motion unless the court determines that (1) it is in the child's best interest to grant the agency permanent custody, and (2) that one of the conditions set forth in R.C. 2151.414(B)(1)(a)-(d) exists. See R.C. 2151.414(B).
 {¶ 36} Furthermore, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
(A) To provide for the care, protection, and mental and physical development of children * * *;
* * * *
(C) To achieve the foregoing purpose , whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
 {¶ 37} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.
 {¶ 38} In addition to finding that the child's best interests support a permanent custody award, under R.C. 2151.414(B)(1), the court also must find that one of the following conditions exist:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 39} In the case at bar, the parties appear to agree that the only factor that applies is R.C. 2151.414(B)(1)(a), i.e., whether the child cannot or should not be returned to either parent within a reasonable time.
 {¶ 40} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. See R.C.2151.414(B)(1)(a). If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * * *
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * * *
(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
* * * *
(16) Any other factor the court considers relevant.
 {¶ 41} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See, e.g., In re West, Athens 05CA4,2005-Ohio-2978, citing In re William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738.
 {¶ 42} In the case at bar, the record contains some credible and competent evidence to support the trial court's decision to award RCJFS permanent custody, and specifically, its findings that awarding RCJFS would serve the children's best interests and that the children cannot or should not be placed with their mother within a reasonable time.
 {¶ 43} First, with respect to the children's interactions and interrelationships, the evidence shows that the mother loves her children and that she enjoys her visitations with them. The visitation monitor recounted a couple of negative interactions. The children are doing well in their foster home and have positive relationships with the foster family.
 {¶ 44} Second, regarding the children's wishes, the guardian recommended that the court award RCJFS permanent custody. Eric expressed anxiety about returning to his mother's care. According to the guardian ad litem, Dreon does not want to return to his mother "as he fully expects her to be incapable of keeping a home and to prevent his opportunity for his education and success." However, we note that the court appointed Dreon separate counsel because he expressed a desire to return to his mother. And, in a prior report, the guardian asserted that Dreon stated that he would like to live with his mother. Denzel did not directly express his wishes and it appears he is too young to do so.
 {¶ 45} Third, with respect to the children's custodial history, the evidence shows that RCJFS first became involved in the children's life in June of 2003. The mother voluntarily surrendered her children at that time so that she could locate appropriate housing for the children. The children have since remained in RCJFS's temporary custody. By the date of the final permanent custody hearing in August of 2005, the children had been in RCJFS's custody for approximately two years.
 {¶ 46} Fourth, regarding the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, the evidence shows that from the summer of 2003 until early 2005, the mother failed to provide a suitable home for the children. Some evidence supports the court's finding that the mother's history shows that she has not been able to provide a secure and permanent home for the children. Eric advised his counselor that he feared returning to his mother's care would mean moving every few months. While the mother now is attempting to maintain a stable residence (as of the August 2005 hearing date, she had lived in a suitable home for approximately six months), her history suggests that she will not be able to continue to provide a secure and stable residence for her children in the foreseeable future. Her current efforts may be admirable, but they are a little too late. See, generally, In re Collins (Aug. 24, 2000), Franklin App. Nos. 99AP-1468 and 99AP-1469 (stating that "eleventh-hour" efforts fall far short of showing that parent has either the desire or the capability of caring for children); Inre Mills (Sept. 10, 1997), Summit App. No. 18047 (eleventh-hour efforts were inadequate to counter two years of noncompliance and neglect).
 {¶ 47} Nothing in the record supports any finding regarding the fifth best interest factor. Therefore, we will not address this factor.
 {¶ 48} The record also contains substantial credible and competent evidence that the children cannot or should not be returned to their mother within a reasonable time. The evidence shows that the mother has continuously and repeatedly failed to remedy the conditions that led to the children's removal. The mother's failure to provide a stable, permanent home for the children was the primary reason for their removal. While she presently has a suitable home, she did not obtain it until February or March of 2005 — over one and one-half years after the time she first advised RCJFS that she would try to find a suitable home for the children. Instead of focusing solely on finding a suitable home, the mother gave birth to two more children. Furthermore, she initially refused housing assistance and her attempts to locate independent housing were half-hearted. She lived with relatives and others until she finally obtained her own house. Moreover, the mother's failure to obtain appropriate housing demonstrates a lack of commitment to her children.
 {¶ 49} The mother's assertion that her compliance with the case plan required the court to deny RCJFS's permanent custody motion is without merit. See, e.g., In re Funk, Portage App. Nos. 2002-P-35 and 2002-P-36, 2002-Ohio-4958 (the issue is whether the parent has substantially remedied the conditions that caused the child's removal, not whether a parent has substantially complied with the case plan).
 {¶ 50} In the case at bar, by the date of the final hearing regarding RCJFS's permanent custody motion, the mother complied with the case plan requirement of locating suitable housing. However, she showed little interest in complying with this requirement until RCJFS filed its permanent custody motion. Furthermore, more than one year elapsed from the time she first surrendered the children to RCJFS in June of 2003 until she finally obtained housing of her own. During that time, she lived with various people and, at times, RCJFS did not know her whereabouts. The mother's attempt to locate independent housing was half-hearted until RCJFS informed her that it would seek permanent custody of her children. Moreover, her history demonstrates that she does not live in the same home for long and that she has been unable to maintain her own home for an extended period of time. At the final hearing date, she had been in a suitable home for only about six months.[3]
 {¶ 51} The mother also complied with the case plan requirement to participate in family counseling. However, she did not complete the last two-hour session of her twelve-hour parenting course.
 {¶ 52} The mother's half-hearted attempt during the first year of the children's removal helps demonstrate a lack of commitment to providing for the children's needs. Additionally, she gave birth to two additional children during the pendency of the case. She surrendered the three older children to RCJFS's custody because she could not properly care for them, yet now wants this court to believe that she can care for two infants and her three older children.
 {¶ 53} Although we may have reached a different result if we had been sitting as the trial court judge, our standard of review does not permit us to substitute our judgment. Instead, we must affirm if "some" evidence supports the court's decision. Because some evidence supports the court's decision to terminate her parental rights, we affirm. Consequently, we overrule the mother's first assignment of error.
 IV {¶ 54} In her second assignment of error, the mother contends that the decision granting RCJFS permanent custody discriminates against her because she is poor.
 {¶ 55} Because the mother did not object to the magistrate's decision on this basis, she has waived the argument. See Stateex rel. Booher v. Honda of Am. Mfg., Inc. (2000),88 Ohio St.3d 52, 53, 723 N.E.2d 571. Civ.R. 53(E)(3)(d) provides that a party shall not assign as error on appeal a trial court's adoption of a finding of fact or conclusion of law unless an objection has been raised and filed. Moreover, such an objection must be specific and state with particularity the objection's grounds. Id. at (E)(3)(b).
 {¶ 56} Assuming the mother had not waived the argument, we find it meritless. The evidence shows that the mother's failure to obtain suitable housing for her children, not her poverty, was part of the reason for the court's decision. There is a difference between being homeless because of lack of funds and being homeless because of lack of motivation. In the instant case, the evidence suggests a lack of motivation, which helps demonstrate an unwillingness or lack of commitment to providing an adequate home for her children. See, generally, In re Lewis,
Athens App. No. 03CA12, 2003-Ohio-5262. The mother's lack of funding is incidental. Accordingly, we overrule the mother's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee shall recover from Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, J., Concurs in Judgment and Opinion.
Abele, J., Concurs in Judgment Only.
Kline, J., Dissents with Dissenting Opinion.
[1] RCJFS did not develop these issues at the permanent custody hearing and the record reveals little else about them.
[2] The magistrate also recommended that the trial court terminate the father's parental rights. Because none of the fathers have appealed the trial court's judgment, we do not discuss the court's decision as it relates to the fathers.
[3] Although she obtained the apartment in October of 2004, the caseworker testified that the mother did not make it suitable for her children until February or March of 2005.