DECISION AND JUDGMENT ENTRY
{¶ 1} Millard Meadows ("father") and Ruby Buck ("mother") separately appeal the judgment of the Adams County Court of Common Pleas, Juvenile Division, which granted permanent custody of their child, P.N.M., to Adams County Children Services ("CS").[2] Father contends that the trial court erred when it granted CS permanent custody because CS failed to make reasonable efforts to reunite the child with mother and father. Because CS is not required to make reasonable efforts to reunite a child with the parents when the parents earlier had their parental rights involuntarily terminated in regards to a sibling of the child, we disagree. *Page 2 
 {¶ 2} Mother contends that the trial court (1) violated Evid.R. 401 and Evid.R. 404(B) when it allowed testimony about prior terminations of parental rights and (2) should not have admitted "stale" I.Q. evidence. Because we find that the trial court did not abuse its discretion, we disagree. Mother next contends that the trial court's dependency finding was against the manifest weight of the evidence. Because this finding is separate from the permanent custody hearing, and because mother failed to appeal this earlier finding, we do not address it for lack of jurisdiction. Mother next contends that the trial court's decision to award CS permanent custody of P.N.M. is against the manifest weight of the evidence. Because competent, credible evidence supports the trial court's findings, we disagree. Finally, mother contends that R.C.2151.414(E)(11) is unconstitutional as applied to her because the court's application violated her due process rights. Because mother wrongly assumes that the trial court relied solely upon the previous terminations of her parental rights to award permanent custody of P.N.M. to CS, we disagree.
 {¶ 3} Accordingly, we overrule father's sole assignment of error; all five of mother's assignments of errors; and affirm the judgment of the trial court.
 I. {¶ 4} On September 29, 2005, CS filed a complaint in juvenile court alleging that P.N.M., born September 27, 2005, was a dependent/neglected child and requested temporary custody. The court immediately granted CS's motion for emergency temporary custody.
 {¶ 5} The child's father received notice of the adjudication hearing but failed to appear. After hearing testimony, the magistrate entered an order on January 24, 2006, finding by clear and convincing evidence that P.N.M. was a dependent minor child, as defined by R.C. 2151.04(C). The magistrate further found that awarding temporary custody to *Page 3 
CS was in the best interest of the child and scheduled a disposition hearing. No one filed objections to the magistrate's January 24, 2006 decision.
 {¶ 6} The court granted CS temporary custody of P.N.M. at the dispositional hearing and filed its entry March 9, 2006. No one appealed.
 {¶ 7} CS moved for permanent custody of the child. Several key witnesses testified, and the court admitted several exhibits into evidence.
 {¶ 8} Karen Kinker, a caseworker for CS, testified that mother and father had two other children together, but that a court terminated their parental rights and awarded permanent custody to the Children Services in Scioto County. She further testified that mother had three other children with a previous husband, and a court awarded permanent custody of all three of those children to Children Services in Scioto County. Children Services in Franklin County received custody of two other children.
 {¶ 9} Dr. Robin Rippith, a psychologist, testified that she first met with mother in late 2003 for a psychological evaluation. She concluded that mother functioned at a fifth grade level on word recognition and at a fourth grade level with respect to spelling and arithmetic. She further concluded that the child "would be placed at risk for abuse and/or neglect, if [she] were in [her mother's] primary care." Dr. Rippith concluded that mother could not parent the child.
 {¶ 10} Dr. Omar Dye, a psychologist, testified that mother did not present major mental illness problems, but she did present problems with intellectual ability. He said that mother tested into the mildly retarded range of intelligence. He concluded that mother has a low level of concentration; has a weak memory; entertained suicidal thoughts in the past, though not currently; and tends to avoid responsibility for her actions. Dr. Dye *Page 4 
testified that mother is not prone to following instructions, including instructions from medical professionals. He stated that mother was "low functioning" and that some, but not all, low functioning people can parent children.
 {¶ 11} Dawn Grooms, a foster care and adoption specialist for CS, testified that at the time CS filed its motion for permanent custody, father was in prison. She testified that the state arrested the mother for possession of crack cocaine in 2003. Grooms recommended that the court not place P.N.M. into mother's home, or the home of father upon his release from prison. She stated that: she witnessed the interaction of the child with her foster parents, and the interaction was very good; the foster parents love the child; and the foster parents desire to adopt the child. Further, Grooms testified that the foster parents have bonded with the child, take care of her medical and basic needs, and provide necessary stability for the child.
 {¶ 12} Andrea Williams, an on-going caseworker for CS, also testified that the child is in a very loving foster home with foster parents that interact with the child appropriately. She testified that courts have removed a total of seven of mother's children from her home. She stated that after P.N.M.'s birth, CS scheduled visitation for the parents, and she noticed at this visitation no bond between child and mother. She said that CS's decision to remove P.N.M. from the home was based primarily on the past removal of mother's seven other children from her home. She also cited the inability of mother and father to handle an infant child and their living arrangements as other factors supporting the removal of the child. She testified that CS had concerns with mother's and father's substance abuse. Finally, she opined that adoption is in the best interest of the child. *Page 5 
 {¶ 13} Mother and father both testified about their desire to parent the child. Mother testified that, in fact, courts in Franklin and Scioto counties previously terminated her parental rights to seven of her other natural children. Mother and father are both unemployed and both receive a little over $600 per month in social security disability. Mother also receives approximately $129 a month in food stamps. Both testified about the conditions of their current apartment, which include a collapsed ceiling and a portion of the front porch that collapsed when mother walked over it. Neither mother nor father has valid drivers licenses or an operable vehicle. However, father testified that he currently is trying to secure housing in West Union. If successful, he stated that they could walk to anything they needed, such as medical care and shopping.
 {¶ 14} After the hearing, the court filed its entry on May 9, 2006 awarding CS permanent custody of P.N.M.
 {¶ 15} Father appeals in case no. 07CA842 and asserts the following assignment of error: THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO THE ADAMS COUNTY CHILDREN'S SERVICE WHERE THE COURT FOUND THAT REASONABLE EFFORTS WERE NOT PUT FORTH BY THE AGENCY TO REUNITE THE CHILD AND THE PARENTS."
 {¶ 16} Mother appeals in case no. 07CA841 and asserts the following five assignments of error: I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED APPELLANT'S OBJECTIONS TO THE TESTIMONY OF KAREN KINKER AT THE ADJUDICATORY AND PERMANENT CUSTODY HEARINGS." II. "THE EVIDENCE IN SUPPORT OF AN ADJUDICATION OF *Page 6 
DEPENDENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." III. "REVISED CODE § 2151.414(E)(11) IS UNCONSTITUTIONAL AND VIOLATIVE OF DUE PROCESS AS APPLIED TO APPELLANT." IV. "THE TRIAL COURT ERRED WHEN IT ADMITTED THE REPORT OF DR. RIPPITH OVER THE OBJECTION OF THE APPELLANT." And, V. "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT GRANTED PERMANENT CUSTODY OF THE MINOR CHILD TO THE ADAMS COUNTY CHILDREN'S SERVICES AGENCY."
 FATHER'S APPEAL — CASE NO. 07CA842 II. {¶ 17} In his sole assignment of error, Father contends that, under Ohio law, a trial court cannot grant permanent custody of a child to CS unless it finds that CS made reasonable efforts to reunite the child with the parents. We undertake a de novo review to answer this legal question. See, e.g., Yazdani-Isfehani v. Yazdani-Isfehani,170 Ohio App.3d 1, 2006-Ohio-7105, ¶ 20.
 {¶ 18} R.C. 2151.419(A)(1) requires the trial court to determine whether CS made reasonable efforts to prevent the continued removal of a child from the home before granting the state's request for permanent custody. In re Meadows, Scioto App. No. 05CA3009, 2005-Ohio-5018, ¶ 16. When making "a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." Id., citingIn re Myers, Athens App. No. 02CA50, 2003-Ohio-2776, ¶ 18.
 {¶ 19} However, R.C. 2151.419(A)(2)(e) states that the trial court must make a finding that CS does not need to make reasonable efforts to prevent the removal of the child *Page 7 
from the home when "[t]he parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353,2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child." See, also, In re Harness, Athens App. No. 06CA28,2006-Ohio-6359, ¶ 19.
 {¶ 20} Further, "[i]n addition to the statutory reasons why reasonable efforts may be unnecessary, courts have recognized an implied exception when case planning efforts would be futile." In re Keaton, Ross App. Nos. 04CA2785 04CA2788, 2004-Ohio-6210, ¶ 69, citing In re Harmon
(Sept. 25, 2000), Scioto App. No. 00CA2693; In re Crosten (Mar. 21, 1996), Athens App. No. 95CA1692. However, "trial courts should be cautious in finding that reasonable efforts would have been futile[.]" Id., citing In re Efaw (Apr. 21, 1998), Athens App. No. 97CA49; see, also, In re T.K., Wayne App. No. 03CA6, 2003-Ohio-2634. Thus, "[w]hile a children services agency generally should make a good faith effort to reunite a dependent child with his biological parent, a reunification plan is not required where it would be futile to implement one." In reMeadows at ¶ 16, citing In re Leitwein, Hocking App. No. 03CA18,2004-Ohio-1296, ¶ 30; Elmer v. Lucas Cty. Children Serv. Bd. (1987),36 Ohio App.3d 241, 244.
 {¶ 21} Here, the trial court's order is unclear whether it ultimately found that CS made reasonable efforts to reunify the child with father or that such efforts were not required. However, the trial court specifically found that father and mother "have had parental rights involuntarily terminated with respect to seven (7) former siblings as relates to the mother, and three (3) former siblings as relate to the father."
 {¶ 22} Therefore, any error that the trial court made regarding its reasonable efforts finding is harmless. CS had no duty, pursuant to R.C.2151.419(A)(2)(e), to use *Page 8 
reasonable efforts to prevent the continued removal of P.N.M. from father's home because the undisputed facts show that father's parental rights were involuntarily terminated with regard to several of P.N.M.'s siblings.
 {¶ 23} Accordingly, we overrule father's sole assignment of error and affirm the judgment of the trial court in case no. 07CA842.
 MOTHER'S APPEAL — CASE NO. 07CA841 III. {¶ 24} In her first and fourth assignments of error, mother claims that the trial court erred when it admitted certain evidence into the record. We disagree.
 {¶ 25} Mother contends in her first assignment of error that the trial court should not have allowed the testimony of Karen Kinker, a CS caseworker, regarding the involuntary termination of her parental rights in prior cases in Scioto County because the testimony was irrelevant, pursuant to Evid.R. 401. Mother further claims that the court should have excluded Kinker's same testimony pursuant to Evid.R. 404(B).
 {¶ 26} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. The words "abuse of discretion" mean that the trial court acted unreasonably, arbitrarily or unconscionably.Blakemore v. Blakemore, (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169. An *Page 9 
error in an evidentiary ruling does not warrant reversal of the trial court's judgment unless the trial court's actions were inconsistent with substantial justice and affects the substantial rights of the parties. Evid.R. 103 and Civ.R. 61.
 {¶ 27} Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "The unfitness of a parent, guardian or custodian can be predicted by past history." In re Bishop (1987),36 Ohio App.3d 123, 126. Thus, a parent's "past parenting history and [the parent's] ability to comply with prior reunification plans regarding [the parent's] other children [are] relevant considerations in the juvenile court's dispositional determination to commit [a child] to the permanent custody of the Department pursuant to R.C. 2151.353 and 2151.414." In re Brown (1989), 60 Ohio App.3d 136, 139.
 {¶ 28} Further, pursuant to R.C. 2151.414, a "court may grant permanent custody of a child to a movant if the court determines at the hearing * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody[.]" R.C. 2151.414(D) provides that "[i]n determining the best interest of a child at a hearing * * *, the court shall consider all relevant factors[.]" Those factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of *Page 10 
a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D). R.C. 2151.414(E)(11) directs the court to specifically consider whether "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child" when determining whether permanent custody is in the best interests of the parties. See In re Baby Girl Elliott, Butler App. No. CA2003-10-256,2004-Ohio-3539, ¶¶ 50-51. Further, a trial court must consider R.C.2151.414(E) in determining whether the child can be placed with a parent within a reasonable period of time. Therefore, the evidence is relevant pursuant to Evid.R. 401.
 {¶ 29} Mother next contends that such evidence is improper evidence of character. Again, we disagree.
 {¶ 30} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."
 {¶ 31} Here, the state did not admit this evidence "to prove the character of a person in order to show action in conformity therewith." Instead, the state offered this evidence to show that the mother's compliance with case plans with regard to her seven other children. This testimony is directly relevant in a permanent custody case because "past parenting history and [the parent's] ability to comply with prior reunification plans *Page 11 
regarding [the parent's] other children [are] relevant considerations in the juvenile court's dispositional determination to commit [a child] to the permanent custody of the Department pursuant to R.C. 2151.353 and 2151.414." In re Brown (1989), 60 Ohio App.3d 136, 139.
 {¶ 32} Therefore, for the above stated reasons, Kinker's testimony on this issue did not violate either Evid.R. 401 or Evid.R. 404(B). Consequently, we find that the trial court did not abuse its discretion by allowing the admission of this evidence.
 {¶ 33} Mother contends in her fourth assignment of error that the trial court erred when it allowed Dr. Rippith's report and testimony into evidence. Specifically, Mother contends that Dr. Rippith's report contained "stale" evidence of mother's I.Q. because it included the results of an I.Q. test performed by another doctor in 1997. Mother asserts that she was prejudiced by such information because without the prior I.Q. score set forth in the report, the court could not have concluded that her current I.Q. had diminished.
 {¶ 34} During the direct examination of Dr. Rippith, the state attempted to admit into evidence the prior I.Q. score contained in Dr. Rippith's report. The court sustained an objection by mother and ruled that it would "not consider [Dr. Rippith's] expert opinion in regard to the I.Q. of [mother] * * *, based upon the unqualified expert opinion of another doctor."
 {¶ 35} Despite an earlier objection, mother's attorney elicited testimony from Dr. Omar Dye, wherein Dr. Dye testified that he performed his own intellectual testing of mother. He concluded that mother's full scale I.Q. was 64, which placed her in "the upper end of the mildly retarded range of intelligence." Mother's attorney then questioned Dr. Dye about Dr. Rippith's report, and asked him specifically, "[d]o you have any comments you *Page 12 
would like to make, based on [Dr. Rippith's] report[?]" Dr. Dye answered that "one of the things that I noted is that * * * they perform[ed] an intelligence test * * *, now the score is a little bit higher than what I reported[,]" but the court should not rely on it because the testing is ten years old.
 {¶ 36} Here, mother invited this testimony into evidence. "A party will not be permitted to take advantage of an error which he himself invited or induced." State v. Bey (1999), 85 Ohio St.3d 487, 493, citingHal Artz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986),28 Ohio St.3d 20, paragraph one of the syllabus; State v. Seiber (1990),56 Ohio St.3d 4, 17. This rule is generally referred to as the "invited error doctrine." State v. Ellis, Scioto App. No. 06CA3071, 2007-Ohio-2177, at ¶ 27. Therefore, we find that the mother invited any alleged error of the court in concluding that mother's I.Q. diminished. Consequently, the trial court did not abuse its discretion when it allowed and considered this evidence.
 {¶ 37} Accordingly, we overrule mother's first and fourth assignments of error.
 IV. {¶ 38} In her second assignment of error, mother contends that the trial court erred when it adjudicated P.N.M. a dependent child. She asserts that the trial court's dependency finding was against the manifest weight of the evidence. We do not address this alleged error because we lack jurisdiction to consider it. Jurisdiction is a legal question, which we review de novo. See, e.g., Yazdani-Isfehani, supra, at ¶ 20.
 {¶ 39} The Supreme Court of Ohio has held that "[a]n adjudication by a juvenile court that a child is * * * "dependent' * * * followed by a disposition awarding temporary custody to a public children services agency * * * constitutes a "final order' within the meaning of R.C.2505.02 and is appealable to the court of appeals pursuant to R.C. *Page 13 
2501.02." In re Murray (1990), 52 Ohio St.3d 155, syllabus. As this court has found, when temporary custody is the disposition, then "failing to file a notice of appeal within thirty days of the temporary custody order * * * [waives] any error that occurred with regard to that order." In re Zimmerman (Aug. 4, 1994), Gallia App. No. 94CA5.
 {¶ 40} Here, on January 26, 2006, the court filed its entry adopting the magistrate's decision from the adjudicatory hearing, which found that P.N.M. was a dependent child and set disposition for March 6, 2006. On March 9, 2006, the court filed its entry from the March 6 dispositional hearing and again adopted the magistrate's decision, which continued temporary custody of P.N.M. with CS. Mother did not appeal the March 9 dispositional judgment within thirty days. Therefore, we lack jurisdiction to consider this issue.
 {¶ 41} Accordingly, we overrule mother's second assignment of error.
 V. {¶ 42} In her fifth assignment of error, the mother asserts that the trial court's decision to award CS permanent custody of P.N.M. is against the manifest weight of the evidence. We disagree.
 {¶ 43} An award of permanent custody must be supported by clear and convincing evidence. In re Hiatt (1993), 86 Ohio App.3d 716, 725. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt in criminal *Page 14 
cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-04.
 {¶ 44} We will not reverse the judgment of the trial court when some competent, credible evidence supports the trial court's findings. In reMarano, Athens App. No. 04CA30, 2004-Ohio-6826, ¶ 12. We give the trial court's final determination "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montogomery App. No. 01CA0083, 2003-Ohio-608, at 102, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 45} "[B]efore a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests." In re McCain, Vinton App. No. 06CA654, 2007-Ohio-1429, ¶ 13. Thus, once the court determines that just one of the specific instances in R.C. 2151.414(E) exist, and that "permanent custody is in the best interest of the child[,]" permanent custody can be awarded.In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 46} Here, the trial court made a finding that the circumstances found in R.C. 2151.414(B)(1)(a) applies. This part of the statute states: "The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." *Page 15 
 {¶ 47} The only disputed part of the finding involves the last part, i.e., "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 48} R.C. 2151.414(E) provides that "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence." Further, "[i]f the court determines, by clear and convincing evidence * * * that one or more of the following [16 factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"
 {¶ 49} Here, the trial court found that the factors in R.C.2151.414(E)(2), (4), (11), (13), and (16) applied.
 A. The R.C. 2151.414(E)(2) factor. {¶ 50} R.C. 2151.414(E)(2) provides that the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time" if the state can show: "Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code[.]" In regards to this factor, the trial court found that mother has "mental retardation, that is so severe, that she is unable to provide an adequate permanent home for the child at the present time, and that due to documented reduction in I.Q. *Page 16 
scores as noted by Dr. Dye, would continue to be unable to provide an adequate permanent home for the child within one year."
 {¶ 51} We find that competent, credible evidence supports the trial court's R.C. 2151.414(E)(2) finding. Dr. Robin Rippith, a psychologist for Mid-Ohio Psychological Service, Inc., testified that she first met with mother in November 2003 for a psychological evaluation. She concluded that (1) mother functioned at a fifth grade level on word recognition and at a fourth grade level with respect to spelling and arithmetic; (2) the child "would be placed at risk for abuse and/or neglect, if [she] were in [mother's] primary care[;]" and (3) mother was unable to parent the child.
 {¶ 52} In addition, Dr. Omar Dye, a psychologist, testified on direct examination that mother (1) did not present major mental illness problems, but that she did present problems with intellectual ability; (2) tested into the mildly retarded range of intelligence; (3) has a low level of concentration; (4) has a weak memory; (5) entertained suicidal thoughts in the past, though not currently; (6) tends to avoid responsibility for her actions; (7) is prone to not follow instructions, including instructions from medical professionals; and (8) was "low functioning[.]" On cross-examination, Dr. Dye testified that mother's I.Q. score is a bit lower than ten years ago.
 {¶ 53} Therefore, we find that the above testimony is competent, credible evidence that supports the trial court's finding as it relates to R.C. 2151.414(E)(2), and thus, R.C. 2151.414(B)(1)(a). Our finding renders moot the trial court's remaining findings involving other factors in R.C. 2151.414(E). In re Pettiford, Ross App. No. 06CA2883,2006-Ohio-3647, ¶ 41 ("The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time."). *Page 17 
 B. Child's Best Interest. {¶ 54} As we stated earlier, "[B]efore a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests." In re McCain, Supra.
 {¶ 55} Now that we have found competent, credible evidence supports the trial court's R.C. 2151.414(B)(1)(a) finding, we now move on to the second part of the trial court's findings as they relate to P.N.M.'s best interests.
 {¶ 56} R.C. 2151.414(D) provides that "[i]n determining the best interest of a child at a hearing * * *, the court shall consider all relevant factors[.]" Those factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 57} We find that competent, credible evidence supports the trial court's findings that R.C. 2151.414(D)(1), (4), and (5) apply. *Page 18 
 {¶ 58} With regard to R.C. 2151.414(D)(1), Andrea Williams, an on-going caseworker for CS, testified that she noticed no bond between P.N.M. and mother during visitation time. Dawn Grooms, a foster care and adoption specialist for CS, testified that she witnessed the interaction of P.N.M. with her foster parents. She said that (1) the interaction was very good, (2) the foster parents love P.N.M., (3) want to adopt her, (4) have bonded with her, (5) take care of her medical and basic needs, and (6) provide necessary stability for the child. We find that this competent, credible evidence supports the trial court's finding.
 {¶ 59} With regard to R.C. 2151.414(D)(4), the trial court found that "[t]he child has special needs for a legally secure placement, due to displayed delays in mobility with limited oratory skills for her age, which cannot be achieved without grant of permanent custody to the agency, in light of the limiting factors of the biological parents[.]"
 {¶ 60} State's exhibit 5 showed that Ann Pavey, an Early Intervention Specialist from the Highland County MR/DD, assessed P.N.M. on July 10, 2006. She advised that P.N.M. "is having some sensory processing challenges and does appear to be showing a very mild delay in the areas of language, motor and self help skills." She recommended: "referral to occupational and physical therapists for assessment; referral to speech pathologist; provide a daily language enriching environment for [P.N.M.]; read to and play music for her on a daily basis; provide a regular schedule and calm, consistent and reassuring environment for her; follow therapists' recommendations; provide opportunities for her to have "floor time' to develop her motor skills; discuss options for periodic visits by Early Intervention to monitor progress and discuss ongoing concerns and/or techniques for working with [P.N.M.] on at least a quarterly basis." We find that *Page 19 
this exhibit when combined with the testimonies we outlined earlier from Dr. Rippith and Dr. Dye is competent, credible evidence that supports the trial court's finding.
 {¶ 61} With regard to the final factor, i.e., R.C. 2151.414(D)(5), the trial court is directed to consider R.C. 2151.414(E)(7) to (E)(11). The trial court found that R.C. 2151.414(E)(11) applies. It directs the court to specifically consider whether "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child" when determining whether permanent custody is in the best interests of the parties. The state presented the testimony of several witnesses, including mother, that mother's parental rights have been involuntarily terminated with regard to seven other children. We find that this is competent, credible evidence to support the trial court's finding.
 {¶ 62} Therefore, in conclusion, competent, credible evidence supports the trial court's findings. Consequently, the trial court's judgment is not against the manifest weight of the evidence.
 {¶ 63} Accordingly, we overrule mother's fifth assignment of error.
 VI. {¶ 64} Mother contends in her third assignment of error that R.C.2151.414(E)(11) is unconstitutional as applied to her because the court's application violated her due process rights. She asserts that the court terminated her right to parent P.N.M. solely because other courts terminated her parental rights with regard to seven of her other children.
 {¶ 65} Mother's assignment of error assumes that the trial court relied solely upon the previous terminations of her parental rights to her seven other children when it *Page 20 
terminated her parental rights to P.N.M. Stated differently, mother assumes that we will not find competent, credible evidence to support the trial court's other findings that did not involve the R.C.2151.414(E)(11) factor. However, in her fifth assignment of error, we found competent, credible evidence to support the court's other findings. Therefore, R.C. 2151.414(E)(11) is not unconstitutional as applied to mother.
 {¶ 66} Accordingly, we overrule mother's third assignment of error and affirm the judgment of the trial court in case no. 07CA841.
 VII. {¶ 67} In conclusion, we overrule the father's sole assignment of error and all of the mother's assignments of error. We affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and that the Appellee shall recover from the Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.
[2] We sua sponte consolidate these appeals only for purposes of this decision. *Page 1